### Thomas Lorimer v. Mary Boylan.

*Real-estate brokers—Commission—Time of sale.*

1. The words "right away," occurring in a letter from a landowner to a land broker, accepting an offer to purchase the land "if the sale is made right away," are held to give the broker a reasonable time to bring about the negotiations with the proposed purchaser; and as to what was a reasonable time, under the circumstances, was for the jury.

2. An arrangement by which two land brokers have authority to sell the same land, and one is to receive 1 per cent. commission in case of a sale by the other, cannot be construed as giving the other the right to sue for 2 per cent. commission on making a sale.

3. Where the interviews of a land broker with a proposed purchaser, who knew before examining the premises that the broker had them for sale, grew out of such agency, his

conduct in securing the offer of purchase, and reporting it to the owner of the property, will not bear the interpretation that he was acting as agent for such purchaser, instead of the owner.

Error to Wayne. (Reilly, J.) Argued October 26, 1893. Decided December 4, 1893.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Edwin F. Conely* and *Orla B. Taylor,* for appellant.

*John Ward,* for plaintiff.

LONG, J. This action was brought to recover commission for the sale of real estate. In August, 1890, defendant placed certain real estate in Detroit in plaintiff's hands for sale. He made several efforts to sell, but was unsuccessful, when in May, 1891, the authority to sell was revoked. In July, 1891, plaintiff claims that he was again given authority to sell, the defendant being in Detroit at that time, and making the arrangement personally, but that it was agreed that Mr. Hannan also had the same authority, and whichever sold should have the commission. Defendant says that the agreement was that, if plaintiff sold the property, Hannan should have 1 per cent., as he then had charge of the property, and plaintiff should have a like amount. The abstract of the property was then in Hannan's hands. Nothing further occurred until August 12, 1891, when plaintiff wrote a letter to defendant, stating that he had a prospective purchaser in Mr. Barnard, of Menominee, who had left a deposit with him to close a sale of another place if he could not buy defendant's property for $13,500. The defendant was then in Chicago, and wrote in answer to this, on August 13, as follows:

"I received your letter. I will take $13,500 cash *if the sale is made right away,* as I got a good tenant to rent it

for three years, and I said I would rent it; but I have signed no lease yet. My husband did not want me to sell any of my property, but I got a good chance to buy something here. I will take $13,500 cash for both of the houses, and let me know before I sign the lease, and answer as soon as possible."

On the following day the plaintiff replied:

"Your favor of the 13th inst. at hand. I wired Mr. E. P. Barnard, of Menominee, Mich., your acceptance of $13,500 cash for both houses; * * * hence I will forward on to you, when I receive his acceptance of the same, money enough to close sale, and on receipt of same you can start at once to get abstract and other papers necessary to be made out to close up the sale complete."

On the day following this letter, the defendant notified Mr. Hannan to turn over the abstract to plaintiff. August 19, at plaintiff's request, the following telegram was sent defendant: "Barnard will be here Friday, to close sale. Come at once. Answer." Defendant answered plaintiff: "Cannot sell. Too late. Thought you could sell sooner." On the same day of this answer by telegram from defendant, and before plaintiff received it, he wrote defendant, stating that he thought Barnard would be in Detroit that week to close the sale, and that Ward would send "a few hundred dollars this week yet, with a contract." Five days after this, and on August 24, Mr. Barnard came to Detroit, when plaintiff telegraphed defendant:

"Buyer is here waiting, with cash. We hold you to your acceptance of $13,500 as per your letters and contract left with me; hence sale must go through, or I will sue for full commission. Have made satisfactory arrangement with Hannan. Answer by wire."

No reply was received to this, and what was meant by "contract left with me" does not appear.

Upon the trial it was insisted as matter of defense:

1. That in the transaction plaintiff acted as agent of Barnard, the purchaser, of which defendant was not at the time apprised.

2. That the authority to sell had been revoked, the sale not having been made "right away," as required by the letter of August 13.

3. That in no event was plaintiff entitled to more than 1 per cent. commission.

—And it is claimed that these questions should have been submitted to the jury.

1. The court directed the jury that—

"If the plaintiff was acting solely as the agent of Mr. Barnard to buy Mr. Barnard a house, and not as the agent of defendant to sell her house, then there would be no claim against defendant. But if he received this property for sale, and his interviews with Barnard grew out of the fact that he had this property for sale, I do not think that his conduct would bear the interpretation that he was acting as agent of Mr. Barnard, instead of as the agent of Mrs. Boylan."

This was a very fair statement of the case to the jury under the testimony. Before Mr. Barnard had ever looked at these premises, he knew plaintiff had them for sale for defendant. It is true that in the mean time they had been taken out of plaintiff's hands, and authority given to Mr. Hannan to sell them; but subsequently defendant authorized plaintiff, as well as Hannan, to make the sale, and they could have sold to any other as well as Barnard under the authority from defendant. The plaintiff testified that defendant knew that Mr. Barnard had engaged him to look up a house for him, and that he had been looking at other houses. He also says he disclosed to her fully his relations with Mr. Barnard. He took Mr. Barnard at one time to see defendant, and she talked with him herself about the sale of this very property.

2. The court directed the jury substantially that the proposition to take the $13,500 if accepted "right away" gave the plaintiff a reasonable time to bring about the negotiations with Mr. Barnard; and if the jury believed, under the circumstances, that an acceptance on the 24th

was a reasonable time, the defendant would be liable. This was a correct interpretation of the words "right away." They could not be construed to mean instantaneously, but within a reasonable time, in view of the particular facts. The word "immediate," occurring in a statute in relation to the delivery and change of possession of property covered by a chattel mortgage, was held by the court in *Richardson v. End*, 43 Wis. 316, to mean within a reasonable time under the circumstances. See, also, *Turner v. Machine & Foundry Co.*, 97 Mich. 156.

3. The court instructed the jury that, if the plaintiff was entitled to recover, his commission would be 2 per cent. upon the agreed purchase price. This was error. If defendant's testimony is true, all that plaintiff could claim would be 1 per cent. If the sale was made,—so far as plaintiff could make it,—and defendant then refused to execute the deeds of conveyance, he might be entitled to his commission of 1 per cent., as agreed; but the other 1 per cent. to be paid belonged to Mr. Hannan, if to anybody. We think the arrangement could not be construed as giving the plaintiff the whole commission, or the right to sue for it.

Judgment must be reversed, and new trial ordered.

The other Justices concurred.